PATRICK H. BURKE v. JOHN G. SMITH.

*Nuisance — Right of land-owner to maintain screens upon his premises.*

In this case, the decree below being affirmed by an equal division of the Court, *nothing* is decided.

Appeal from Kalamazoo. (Mills, J.) Argued October 6, 1887. Decided April 20, 1888.

Bill filed to abate an illegal nuisance, etc. Decree below, granting relief prayed for, affirmed by an equal division of the Court. The facts are stated in the opinion.

*George M. Buck,* for complainant.

*Hampden Kelsey,* for defendant.

MORSE, J. The parties to this suit own adjoining lots in the city of Kalamazoo.

The complainant built two dwelling-houses on his lot for the purposes of rental. One house fronts on Park street; the other upon Osborn street. These houses came up within, about two feet of the line between him and the defendant.

When these houses were built, Smith had a house on his lot, fronting on Park street, with room for a drive-way between his house and complainant's premises. About the time complainant erected his houses, Smith built a house on his lot fronting on Osborn street. Complainant's houses were about 14 feet front, with a single tier of rooms running back from the street.

These parties got into a quarrel, and, as the result of petty annoyances on both sides, the defendant finally put a screen or fence in front of the lower side windows of the complainant,

as it is claimed, covering, obscuring, and darkening the same, and shutting out the light and air therefrom. The evidence shows these screens to be two in number, and about eleven feet high, coming up to the top of the lower window, of complainant's houses. They were built by setting posts in the ground, and nailing boards against them. They were open at the bottom below the windows.

I think it is established by the evidence that these screens were not put up for a fence, or any other necessary or useful or ornamental purpose, but simply to shut out the view of defendant's premises from complainant's windows.

Smith claims that he did not wish the occupants of complainant's houses to gaze into his windows, or to witness the getting out of and into carriages of his family at the horse block beside the drive-way, and for that reason put up these barriers. There is plenty of evidence that when he was erecting these screens he said he was doing it to shut the light out of Burke's windows. I think there was nothing but malice in his motives.

The complainant files his bill of complaint alleging the ownership, value, and use of the property belonging to him; the desirability of these houses for rental to families being averred as constituting their chief value. He alleges that these screens were unnecessarily erected from malicious motives, and for the express and avowed purpose of darkening the windows of his two houses, and cutting off the light from entering the windows of said houses, obstructing the view from them, and thereby injuring the value of the houses. He avers that they are an intolerable nuisance; that, by their existence, light and air are prevented from freely entering his houses, the view from the windows is wholly obstructed and cut off, the looks and appearance of the houses greatly injured, their desirability as homes greatly lessened, their rental value depreciated, and their actual market value reduced more than $500, and prays that said

screens may be abated as a nuisance, and a perpetual injunction allowed against a continuation or renewal of the same.

The court below granted the prayer of the complainant's bill.

These screens are erected entirely upon the lot of the defendant, and he appeals to this Court, claiming that he has a perfect right to erect and maintain them; and that the question of his motives has nothing to do with the legal aspects of the case, though he disclaims any malice against complainant. It must be taken for granted, in disposing of this case, that these screens were not erected for the purposes of a fence, or for any other necessary, useful, or ornamental purpose. The pretense that they were built to keep prying eyes from observing what was going on in the houses or yard of the defendant is not supported by the proofs. The evidence is clear to my mind that malice alone entered into the reason and motive of their erection.

The proofs are conclusive upon this subject.

It is admitted by the counsel for the complainant that he would have no redress had the defendant erected houses or useful buildings or structures as near to complainant's line as these screens are, even though the consequent damage of such erection would have been as great or greater than it has been and now is from the effect of these screens upon the dwellings of complainant in every respect here complained of.

But his contention is that these screens being a damage to the houses of complainant, and being erected for no good or useful purpose, but with the malicious motive of doing injury, they become and are such a nuisance to the property of complainant that equity will cause their removal, and enjoin their future erection or continuance.

He invokes the legal maxim that—

"Every man in the use of his own property must avoid injury to his neighbor's property as much as possible;"—

And argues that, while it is true that when one pursues a strictly legal right his motives are immaterial, yet no man has a right to build and maintain an entirely useless structure for the sole purpose of injuring his neighbor. The argument has force, and appears irresistible, in the light of the moral law that ought to govern all human action. And the civil law, coming close to the moral law, declares that—

" He who, in making a new work upon his own estate, uses his right without trespassing either against any law, custom, title, or possession which may subject him to any service towards his neighbors, is not answerable for the damages which they may chance to sustain thereby, *unless it be that he made that change merely with a view to hurt others without advantage to himself.*"

Thus the civil law recognizes the moral law, and does not permit the owner of land to do an act upon his own premises for the express purpose of injuring his neighbor, where the act brings no profit or advantage to himself. The law furnishes redress, because the injury is malicious and unjustifiable. The moral law imposes upon every man the duty of doing unto others as he would that they should do unto him; and the common law ought to, and in my opinion does, require him to so use his own privileges and property as not to injure the rights of others maliciously, and without necessity.

It is true that he can use his own property, if for his own benefit or advantage, in many cases to the injury of his neighbor; and such neighbor has no redress, because the owner of the property is exercising a legal right which infringes on no legal right of the other. Therefore, and under this principle, the defendant might have erected a building for useful or ornamental purposes, and shut out the light and air from complainant's windows; but when he erected these "screens" or "obscurers" for no useful or ornamental purpose, but out of pure malice against his neighbor, it seems to me a different principle must prevail. I do not think the common law

permits a man to be deprived of water, air, or light for the mere gratification of malice. No one has an exclusive property in any of these elements except as the same may exist or be confined entirely on his own premises. If a pond of water lies entirely within his lands, without inlet and outlet, he may do with it as he pleases while he keeps it upon his own premises. He may also use as he pleases what air or light he can keep and hold within his dominion upon his own lands. But to the air and light between the earth and the heavens the right of each man is more or less dependent upon that of his neighbor. His neighbor must bear the inconvenience and annoyance that the legal and beneficial use of his premises engenders in this respect, if such use falls short of what the law treats as a nuisance; but the right to use one's premises to shut out or curtail the use of either of these elements by his neighbor, out of mere malice and wickedness, when such use is not beneficial to him in any sense, does not exist in law or equity. The complainant in this case had a right to the use of the air and light about his houses, and over defendant's lands, until such right came in conflict with the defendant's enjoyment of his property. This air and light was free and unconfined, and the common property of all.

The leading case relied upon by the defendant, and which has been followed by the courts of several of the states, is *Mahan v. Brown*, 13 Wend. 261. The action was brought for the *obstruction of lights*. It was averred that the defendant had wantonly and maliciously erected near to and in front of plaintiff's windows a *fence* of the height of 50 feet, without benefit or advantage to himself, and for the sole purpose of annoying plaintiff, by means whereof her house was greatly darkened, and the light and air obstructed from entering the same through the windows, rendering the house uninhabitable, so that her boarders had left her, and her apartments were untenanted, etc.

This fence was built, as the screens in this case were, by

the defendant under the pretense of preventing his yard from being overlooked by the windows in the plaintiff's house, but in fact from mere malice, and with the intent to exclude the light and air from the windows of the plaintiff.

The court, Savage, C. J., delivering the opinion, hold that a person who makes a window in his house overlooking the privacy of his neighbor does an act which strictly he has no right to do, although it is said no action lies for it.

"He is therefore encroaching, though not strictly and legally trespassing, upon the rights of another. He enjoys an easement, therefore, in his neighbor's property, which in time may ripen into a right. But before sufficient time has elapsed to raise a presumption of a grant he has no right, and can maintain no action for being deprived of that easement, *let* the *motive* of the deprivation be what it may; and the reason is that in the eye of the law he is not injured. He is deprived of no right, but only prevented from acquiring a right, without consideration, in his neighbor's property."

The time fixed for acquiring this right or easement in the opinion is 20 years.

I apprehend that at this late day this is not the law in Michigan, and that it never was. A man here has a right to build a window in his house overlooking his neighbor's land, and he gets or gains no easement in his neighbor's property by so doing; and no lapse of time will make his lights "ancient," or prevent his neighbor from the beneficial use of his property, even to the detriment or total obstruction of air and light from his windows, if such windows are so near the premises of his neighbor that his building upon his land will darken or destroy them. Such being the law here, the reason for the decision in *Mahan v. Brown,* does not exist in, and can have no application to, the case under consideration.

This ruling in *Mahan v. Brown* is followed in *Phelps v. Nowlen,* 72 N. Y. 39; *Chatfield v. Wilson,* 28 Vt. 49; *Walker v. Cronin,* 107 Mass. 555, and many other cases.

In a well-reasoned case in 74 Mc. 164 (*Chesley v. King*), the authorities are reviewed, and the court reach the conclusion that—

"It cannot be regarded as a maxim of universal application that 'malicious motives cannot make that a wrong which in its own essence is lawful.'"

In that case the defendant dug a well upon his own land, which cut off the sources of supply from a spring upon plaintiff's premises. There was a special finding that defendant dug the well for the—

"Mere, sole, and malicious purpose of diverting the veins of water which supplied the spring in question, and not for the purpose of procuring a better supply of water for himself and improving his estate."

The supreme court found that this special finding was not supported by the evidence, but they take issue with the doctrine of *Phelps v. Nowlen*, 72 N. Y. 39, and *Chatfield v. Wilson*, 28 Vt. 49, and hold, in substance, that, if the special finding had been true, the plaintiff's action would have been sustained.

I am satisfied that the decree of the court below in this case is just and equitable, and can be sustained, if not by the weight of authority, by the better reason and the best authority.

In *Chasemore v. Richards*, 7 H. L. Cas. 387, 388, the court, in laying down the rule that the owner of land has a right to the enjoyment of the land, and to the underground waters upon it, and that he may, in order to obtain that water, sink a well to the injury of his neighbor, qualify the rule by saying that—

"It seems right to hold that he ought to exercise his right in a reasonable manner, with as little injury to his neighbor's rights as may be," and allude to the fact that the civil law "deems an act, otherwise lawful in itself, illegal if done with a malicious intent of injuring a neighbor *animo vicino nocendi*."

In *Greenleaf v. Francis*, 18 Pick. 117, it is said: "These rights should not be exercised from mere malice." See, also, *Wheatley v. Baugh*, 25 Penn. St. 528; *Roath v. Driscoll*, 20 Conn. 533; *Trustees v. Youmans*, 50 Barb. 316, 320; *Panton v. Holland*, 17 Johns. 92, 98; *Haldeman v. Bruckhart*, 45 Penn. St. 514.

In an Ohio case the query is raised, but not answered, whether if a hole was dug upon one's premises to the damage of his neighbor,—

"From motives of unmixed malice, without any object, and, when done, incapable of answering any end, either of ornament, convenience, or profit, connected with the enjoyment and use of his property"—

An action would not lie for the injury. *Frazier v. Brown*, 12 Ohio St. 294, 304.

Mr. Cooley, in his work on Torts, in speaking of nuisances, says:

"If a discomfort is wantonly caused from malice or wickedness, a slight degree of inconvenience may be sufficient to render it actionable." Cooley, Torts, 596.

Mr. Washburn, in his treaties on Easements, quotes with favor the doctrine as to rights in the use of water laid down in *Wheatley v. Baugh, supra*:

"Neither the civil nor the common law permits a man to be deprived of a spring or stream of water for the mere gratification of malice. * * * The owner of land on which a spring issues from the earth has a perfect right to it against all the world, except those through whose lands it comes. He has even a right to it against them *until it comes in conflict with the enjoyment of their right of property*." Washb. Easem. (3d ed.) 487, 488.

I cannot see why this principle does not apply with equal force to air and light, which are more free, and less capable of confinement, than water; and when there is, as in this State, no danger of a prescriptive right being acquired in windows, the reason assigned by Washburn and others for

the distinction between the two elements, light and water, is not applicable.   See Washb. Easem. 489; *Mahan v. Brown,* 13 Wend. 264.

If a man has no right to dig a hole upon his premises, not for any benefit to himself or his premises, but for the express purpose of destroying his neighbor's spring, why can he be permitted to shut out air and light from his neighbor's windows, maliciously, and without profit or benefit to himself?

By analogy, it seems to me that the same principle applies in both cases, and that the law will interpose and prevent the wanton injury in each instance.

In *Phelps v. Nowlen, supra,* it is stated that the doctrine is settled in New York—

"That, if a man has a legal right, courts will not inquire into the motive by·which he is actuated in enforcing the same.   A different rule would lead to the encouragement of litigation, and prevent, in many instances, a complete and full enjoyment of the right of property which inheres to the owner of the soil.   An idle threat to do what is perfectly lawful, or declarations which assert the intentions of the owner, might often be construed as evincing an improper motive and a malignant spirit, when in point of fact they merely stated the actual rights of the party.   Malice might easily be inferred, sometimes, from idle and loose declarations, and a wide door be opened by such evidence to deprive an owner of what the law regards as well-defined rights."

But it must be remembered that no man has a legal right to make a malicious use of his property, not for any benefit or advantage to himself, but for the avowed purpose of damaging his neighbor.   To hold otherwise would make the law a convenient engine, in cases like the present, to injure and destroy the peace and comfort, and ·to damage the property, of one's neighbor for no other than a wicked purpose, which in itself is, or ought to be, unlawful.

The right to do this cannot, in an enlightened country, exist, either in the use of property, or in any way or manner.

There is no doubt in my mind that these uncouth screens or "obscurers," as they are named in the record, are a nuisance, and were erected without right, and for a malicious purpose.

What right has the defendant, in the light of the just and beneficent principles of equity, to shut out God's free air and sunlight from the windows of his neighbor, not for any benefit or advantage to himself, or profit to his land, but simply to gratify his own wicked malice against his neighbor? None whatever.

The wanton infliction of damage can never be a right. It is a wrong, and a violation of right, and is not without remedy.

The right to breathe the air, and to enjoy the sunshine, is a natural one; and no man can pollute the atmosphere, or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice towards his neighbor.

It is said that the adoption of statutes in several of the states making this kind of injury actionable shows that the courts have no right to furnish the redress without statutory authority. It has always been the pride of the common law that it permitted no wrong with damage, without a remedy. In all the cases where this class of injuries have occurred, proceeding alone from the malice of the defendant, it is held to be a wrong accompanied by damage. That courts have failed to apply the remedy has ever been felt a reproach to the administration of the law; and the fact that the people have regarded this neglect of duty on the part of the courts so gross as to make that duty imperative by statutory law furnishes no evidence of the creation of a new right or the giving of a new remedy, but is a severe criticism upon the courts for an omission of duty already existing, and now imposed by statute upon them, which is only confirmatory of the common law.

The decree of the court below is affirmed, with costs of both courts.

SHERWOOD, C. J., concurred with MORSE, J.

CAMPBELL, J. This case, assuming all that is claimed for complainant, is one where he opened windows on the side of his house near defendant's line, and defendant built a screen entirely on his own land high enough to keep his own house, so far as its lower story and side porch and entrances are concerned, from being open to the view from complainant's windows. No authority has been found, and I am satisfied there is no authority, at least in any region from which we have borrowed our law, which controverts defendant's right to secure his privacy in that way. If we should grant the complainant relief, we should not only be going beyond the judicial province in making the law, but we should also make a rule in conflict with the universal weight of authority.

It was urged on the argument that there was at least foundation for such relief in the civil law, and that we might follow that if we chose. I have searched diligently, and found no such authority. On the other hand, the civil law reckoned the right of one proprietor to secure a prospect over his neighbor's land as an easement which could only be gained by grant, or possibly by such prescription as would be equivalent to a grant. The civil-law countries in Europe have held a rule, if anything, more stringent. In Scotland it is held that such an easement cannot be gained by prescription, or anything short of express contract. Erskine, 209. The reason given is that a man cannot be compelled to build on his own land except to suit his own convenience, and that, if a right of prospect could be gained by lapse of time, it would impose a burden on every neighboring proprietor as to the use of his own land which would be unreasonable. Domat, in his treatise on the Civil Law, under the head of "Servitudes,"

indicates strongly the same doctrine, requiring consent. Book 1, tit. 12, § 2. And he also refers to the lack of necessity for any extension of privilege. And in his select maxims from the civil law it is laid down that no action lies for shutting off light where no servitude exists. Legum Delectus, lib. 8, tit. 2, § 6. In the Institutes of Justinian, concerning servitudes (book 2, tit. 3, § 4), explaining how servitudes may be created, reference is made expressly to this right of prospect, and the methods of obtaining them are in the text confined to contracts and wills. By the French Code it is declared that no servitude can be created except by agreement or prescription, and it is not very clear that such a right as that of a free prospect over the grounds of another can be gained by anything but grant. Code Civil, lib. 2, chap. 3, §§ 1, 2; Compto Traili de la Prepinto, 343. It is expressly declared that no one can without his neighbor's consent make windows or other openings in a party wall; and where the wall is on one's own ground, but near the line, no windows can be made except at such a height from the floor as will prevent looking over upon the next lot, and with fixed gratings of not more than four-inch openings, so that a head cannot be reached through them. Code Civil, book 2, tit. 4, § 3. In this there is substantial resemblance to the customary law of France, from which it was borrowed; the custom of Paris declaring that servitudes cannot be created by prescription, that party walls cannot be pierced, and that windows or lights in walls near a neighbor's land must be nine feet above the ground floor, and seven and a half feet above each other floor, and grated, and not opening. Articles 136, 199–201.

The right to overlook a neighbor's premises seems, by the civil law, to be one depending entirely on whether such a servitude has been created; and, if it has not been, there can be no doubt of the right of the neighbor to stop it. This is emphatically declared in Mack. Rom. Law, 179.

The only occasion for referring to the civil law here arises

out of a reference to it on the argument, which does not appear to be well founded. Our law rests on our own American common-law usages; and a somewhat careful search has failed to bring to light any authority for holding that any one is bound to permit his privacy to be invaded by his neighbors, without the right to screen his premises against them.

There seems to be no particular difference in the common-law authorities in holding that a house-owner, not using a party wall, may have as many windows as he chooses opening on his own premises. But there is as little difference in regard to the right of any neighbor to put up such barriers on his own land as will screen it from observation. There can be no question about the character of such a right as complainant claims. It is the right to have his prospect into defendant's property left unobstructed. It is an easement in the strictest sense of the term, and is among those expressly designated as such by all systems of laws. No man can create an easement for himself. If he has no such right, then he cannot complain that it is interfered with, either at law or in equity.

In England it has been held that such an exercise of privilege may, under some circumstances raising a presumption of grant, ripen into the character of an ancient light, which cannot be interfered with. It is there also held that an action will not lie merely for opening such a window, and that the party who desires to prevent it from becoming a right must resort to such measures concerning his own property as will hinder it. There is nothing to prevent the erection of any fence or barrier to reach this result. Mr. Washburn lays it down as the result of the American authorities —some of which allow prescriptive privileges, while most of which deny them altogether—that the proper and lawful remedy against such windows is obstructing the view by any efficient means on the premises of the party complaining,

and that the motive is of no consequence' where there is no contrary right. 2 Washb. Real Prop. 60. See, also, Washb. Easem.

The English authorities hold this also in respect to cases where the right is not ancient. *Wheeldon v. Burrows,* 12 Ch. Div. 31; *Davies v. Marshall,* 1 Drew. & S. 557; *Renshaw v. Bean,* 10 L. & Eq. 417; *Potts v. Smith,* L. R. 6 Eq. 311; *Butt v. Gas Co.,* L. R. 2 Ch. 158. It was held in *Roberts v. Macord,* 1 Moody & R. 230, that there was no easement in a prospect, and that rights in windows did not go so far. And in *Wheeldon v. Burrows,* above cited, it was held that the sale of a house by one owning also the adjacent lot involved no implied covenant not to darken the windows. And in *Wynstanley v. Lee,* 2 Swanst. 333, it was recognized that in London there never was any presumption of a right to light. This has been always recognized as the custom of London, and was the law there until the passage of an act of parliament which changed the disputable presumption which sometimes arose, after long time, into an absolute right, after 20 years, to have windows left clear, and made the rule applicable in spite of local customs. In *Yates v. Jack,* L. R. 1 Ch. 295, it was held that the statute now in force abolished the custom of London and of other cities; and the court, while commenting on the absurd consequences in a city, felt bound to apply the statute, and require the owner of buildings only 20 or 30 feet high on one side of a London street to abstain from raising them higher, and thus lessening the light that would fall on the other side. The result of such a rule is to destroy the value of property, and prevent its owner from using it for natural and proper purposes.

In the nature of things, there can be no wrong in preventing another from doing what he has no right to insist upon. It was held by this Court in *Allen v. Kinyon,* 41 Mich. 281, that the motive is of no consequence when the party does

not violate the rights of another; and in support of this doctrine reliance was had on *Mahan v. Brown,* 13 Wend. 361, where the case was like the present one in its circumstances, but much more serious. There a fence was put up, as the screen was here, for the express purpose of preventing the view from 15 windows over defendant's ground. The court held that, where there was no right to the prospect, there was no wrong in fencing it out, and that the defendant's motive was of no consequence, as he was in the exercise of his own right. In *Parker v. Foote,* 19 Wend. 309, this doctrine was approved, and it was further held that the doctrine of ancient lights did not apply here. It was held by this Court in *Hawkins v. Sanders,* 45 Mich. 491 (8 N. W. Rep. 98), that there was no right of prospect which would prevent the erection of an awning on a neighboring lot. In *Durant v. Riddell,* 12 La. Ann. 746, the same rule was applied to a veranda covering the sidewalk.

The doctrine of *Mahan v. Brown* has been repeatedly enforced in Illinois in very strong language; the court holding that a fence or screen of any height was lawful to shut off the view from a neighboring window. *Honsel v. Conant,* 12 Bradw. 259; *Guest v. Reynolds,* 68 Ill. 478.

In *Vansyckel v. Tryon,* 6 Phila. 401, and *Vollmer's Appeal,* 61 Penn. St. 130, it was held that in Philadelphia it was an actionable wrong to open windows over a neighbor's ground in a party-wall, and relief was granted in equity. In *Shell v. Kemmerer,* 13 Phila. 502, where a bill was filed to prevent tearing down a fence raised to darken a window, and to enjoin the continuance of the window, it appeared the fence was already torn down, and the party was therefore left to his action of trespass, which it was held would be adequate. So far as the window was concerned, the court, inasmuch as it was not governed by the law of Philadelphia, held it must be dealt with by the general law, and, while stating it was such a nuisance as ought to be remediable, the judges considered

themselves bound by authority not to hold the mere existence of a window actionable, but to consider, in the light of authority, that the proper remedy was by act of the party by putting up obstructions.

It certainly cannot be any man's duty to rebuild or to build when he has no occasion for so doing, and when an open yard or grounds may be desirable for his comfort. No one disputes his right to shut off windows in that way; and there is no authority for holding that, if he does not wish to build, he may not in any other effective way secure the privacy which is his right on his own premises. That, according to the sense of all civilized nations, is a valuable domestic right, and, if we deny it, we shall find no standing point in jurisprudence to justify it.

I think complainant has no right whatever to complain of defendant's screen, and that his bill should be dismissed, with costs of both courts.

CHAMPLIN, J. I concur with my Brother CAMPBELL that the decree should be reversed. The decisions have been quite uniform to the effect that the motives of a party in doing a legal act cannot form the basis upon which to found a remedy against such party. Under these circumstances, it should be left to the Legislature to define and prohibit the act and declare the remedy, as has been recently done in Massachusetts, Vermont, and some of the other states. Pub. Acts Mass. 1887, chap. 348; Pub. Acts Vt. 1886, p. 59.

I think, also, that legislation of the character contained in the statutes above cited is required, and would meet my hearty approval. We should then have a rule certain in its provisions and operative upon all alike with due and proper safeguards to the owners of private property.