# HIBBARD v. HALLIDAY.

Nos. 6594, 6595.   Opinion Filed June 13, 1916.

Rehearing Denied July 25, 1916.

(158 Pac. 1158.)

1.  **PROPERTY—Nature of Right—Limitations.** Property in land must be considered, for many purposes, not as an absolute, unrestricted dominion, but as an aggregation of qualified privileges, the limits of which are prescribed by the equality of rights and the correlation of rights and obligations necessary for the highest enjoyment of land by the entire community of proprietors.

2.  **SAME.** The right to use one's own property for the sole purpose of maliciously injuring another is not one of the immediate and indestructible rights of ownership.

3.  **TORTS—Willful Acts.** At the common law there was a cause of action whenever one person did damage to another willfully and intentionally and without just cause or excuse.

4.  **ADJOINING LANDOWNERS — Nuisance — Pleading — Petition.** A petition in an action for damages for the malicious construction and maintenance of a high brick wall on the line between adjoining lot owners, in which it is alleged in effect that the defendant erected said wall and has since maintained and now maintains the same, without advantage to himself and without intent to benefit himself in any legal manner, but erected and has maintained the same maliciously and for the sole purpose of injuring the plaintiff in and about the use, occupation, and enjoyment of said premises and the value of the same, and that by the erection and maintenance of said wall said plaintiff has been deprived of light and air, which has resulted in pecuniary damage to him, states facts sufficient to constitute a cause of action against the defendant.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Action by John S. Halliday against Harry Hibbard. Judgment for plaintiff, and defendant brings error. Affirmed.

*William T. Hutchings,* for plaintiff in error.

*Owen & Stone* and *Guy F. Nelson,* for defendant in error.

KANE, C. J.   This was an action for damages, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.   Upon trial to a jury there was a verdict for the plaintiff, to reverse which this proceeding in error was commenced.   Hereafter the parties will be designated as "plaintiff" and "defendant," respectively, as they appeared in the trial court.

It seems that the parties to this action are owners of adjoining lots situated on Okmulgee avenue, in the city of Muskogee.   During the summer and fall of 1908, the plaintiff completed a flat on his lots consisting of eight apartments with twelve windows on the west side overlooking adjoining lots of the defendant.   At the time the flat was completed there was an unobstructed view from the windows on the west side, and the unobstructed windows also afforded light and air for the plaintiff and his tenants who occupied apartments on the west side of the flat.   The plaintiff in his petition states his cause of action against the defendant as follows:

"That in the month of November, 1908, and after plaintiff's said flat building was practically completed and after said windows above mentioned were made and left, defendant, without the consent of plaintiff and against his will and without making any compensation to plaintiff for damages which plaintiff would and did sustain, erected a solid brick wall on the line between the said premises of plaintiff and defendant or on defendant's said premises in close proximity to said line, and within six or eight inches of the west wall of plaintiff's said flat building; that said wall so erected by defendant is almost the full length of plaintiff's said flat buildings and within a few inches as high and is about thirteen inches thick; that there are no openings in said wall of defendant and that

the same shuts out the light and air from plaintiff's said flat building and the windows on the west side thereof.

"Plaintiff further states that defendant erected said wall and has since maintained and now maintains the same without advantage to himself and without intent to benefit himself in any legal manner, but erected and has maintained and now maintains the same maliciously and for the sole purpose of injuring plaintiff in and about the use, occupation and enjoyment of said premises and the value of the same.

"Plaintiff further states that by reason of the erection and maintenance of said wall by defendant as aforesaid plaintiff has been deprived of light and air on the west side of his said flat building; that by reason thereof he has been damaged in the use, occupation, and enjoyment of the apartment in said flat building, occupied by plaintiff and his family as aforesaid in the sum of $600; that the rental value of the remaining seven apartments in said flat building has been greatly depreciated by reason of the erection and maintenance of said wall by defendant as aforesaid to the plaintiff's damage in the sum of $2,500."

There was evidence adduced at the trial reasonably tending to establish the allegation of the petition to the effect that the defendant, without advantage to himself and without intention to benefit himself in any legal manner, erected and maintained said wall maliciously and for the sole purpose of injuring the plaintiff in and about the use and occupation and enjoyment of his property, and that by so doing the plaintiff was pecuniarily damaged as alleged.

Counsel for defendant states his principal contention as follows:

"The plaintiff in error in this case had the lawful right to construct a wall which deprived the defendant in error of light and air; and this is true although done with

the intent to injure the defendant in error and without any advantage to himself.

"While we do not concede that the evidence in this case brings the facts within the contention above, and we shall endeavor later on to show that it does not, but we do contend that the law is as above stated, and that although such an extreme case might have existed here, still the law was with the plaintiff in error."

We do not believe that this contention can be sustained upon principle or by the weight of modern authority.

We may concede at the outset that at common law no actionable wrong can arise, unless there has been some invasion of another's right; and that the owner of land has a right to make any reasonable use of his property without liability for any loss there may flow to his neighbor from such use; and that a lawful act cannot be actionable, though it proceeded from a malicious motive. A critical examination, however, of some of the many cases cited by counsel in support of their various contentions convinces us that whatever conflict there appears to be in the authorities on the question now before us is due more to the difficulty of applying the very general rules to specific statements of facts than to any misunderstanding as to the rules themselves. We can nowhere find it stated broadly as a principle of the common law that a landowner's property right in real estate includes the right to use it malevolently solely for the injury and annoyance of his neighbor without intending to subserve any useful purpose of his own. Therefore, when we concede that the owner of land has a right to make any reasonable use of his property, and when employed for such use may rightfully injure another, it does not follow that by its use for a wholly wrongful purpose he may also rightfully

injure another. Such a conclusion, it seems to us, would import absolute dominion on the part of the landowner and run counter to the maxim of the common law, *"Sic utere tuo ut alienum non laedas,"* which, freely translated, enjoins that every person in the use of his own property should avoid injury to his neighbor as much as possible. As was said by Mr. Justice Doe in the case of *Thompson v. Androscoggin River Imp. Co.,* 54 N. H. 545, 551:

"Property in land must be considered, for many purposes, not as an absolute, unrestricted dominion, but as an aggregation of qualified privileges, the limits of which are prescribed by the equality of rights, and the correlation of rights and obligations necessary for the highest enjoyment of land by the entire community of proprietors."

It is true that no one has an exclusive property in air or light except as the same may exist or be confined on his own premises, but under a correct application of the principle above enunciated we do not think it can be said that the common law permitted a man to be deprived of light or air for the mere gratification of malice. At common law there was a cause of action, whenever one person did damage to another willfully and intentionally, and without just cause or excuse. *Skinner v. Shaw* (1893), 1 Ch. 422; *Aikens v. Wisconsin,* 195 U. S. 194, 25 Sup. Ct. 3, 49 L. Ed. 154. Section 6, art. 2, of the Bill of Rights is declaratory of the same principle, as is also section 2845, Rev. Laws 1910, which provides:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

As was said by Mr. Justice Morse, in *Burke v. Smith,* 69 Mich. 380, 37 N. W. 838:

"The wanton infliction of damages can never be a right. It is a wrong and a violation of right, and is not without remedy. The right to breathe the air, and to enjoy the sunshine, is a natural one; and no man can pollute the atmosphere, or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice towards his neighbor. It is said that the adoption of statutes in several of the states making this kind of injury actionable shows that the courts have no right to furnish the redress without statutory authority. It has always been the pride of the common law that it permitted no wrong with damage, without a remedy. In all the cases where this class of injuries have occurred, proceeding alone from the malice of the defendant, it is held to be a wrong accompanied by damage. That courts have failed to apply the remedy has ever been felt a reproach to the administration of the law; and the fact that the people have regarded this neglect of duty on the part of the courts so gross as to make that duty imperative by statutory law furnishes no evidence of the creation of a new right or the giving of a new remedy, but is a severe criticism upon the courts for an omission of duty already existing, and now imposed by statute upon them, which is only confirmatory of the common law."

It may be that prior to the opinion of Mr. Justice Morse in *Burke v. Smith, supra,* the weight of authority inclined toward the contention of counsel for the defendant, but since that date the trend of authority certainly has been the other way. It is true that the opinion of Mr. Justice Morse was not concurred in by a majority of the members of the court, but ever after its pronouncement it became the rule in Michigan without dissent. *Flaherty v. Moran,* 81 Mich. 52, 45 N. W. 381, 8 L. R. A. 183, 21 Am. St. Rep. 510; *Kirkwood v. Finegan,* 95 Mich.

543, 55 N. W. 457; *Peek v. Roe,* 110 Mich. 52, 67 N. W. 1080.

, At the present time we find the judicial reasoning as well as the Christian ethics of the Supreme Court of Michigan, as expressed in the opinion of Mr. Justice Morse, has found eloquent and forceful approval in the opinions rendered in the following cases: *Norton v. Randolph,* 176 Ala. 381, 58 South. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714; *Barger v. Barringer,* 151 N. C. 433, 66 S. E. 439, 25 L. R. A. (N. S.) 831, 19 Ann. Cas. 472. · And, it may be added, the underlying reasons for the conclusion reached have been convincingly stated in the decisions of several other states in the course of opinions dealing with and sustaining the constitutionality of statutes making certain malicious and nonuseful structures unlawful. *Horan v. Byrnes,* 72 N. H. 93, 54 Atl. 945, 62 L. R. A. 602, 101 Am. St. Rep. 670; *Rideout v. Knox,* 148 Mass. 368, 19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 560. As we fully agree with the reasoning and conclusion reached in these cases, that no man can pollute the atmosphere or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice toward his neighbor, we are content to follow them, well pleased to find our pathway so thoroughly and satisfactorily illuminated.

The other errors assigned belong to the class covered by section 6005, Rev. Laws 1910, which do not warrant a reversal unless, after an examination of the entire record, it appears to the Supreme Court that the errors complained of have probably resulted in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right. Of these it is sufficient to say that, after

an examination of the entire record, it does not so appear. There was practically no conflict in the evidence taken at the trial upon any material fact.

The general construction and appearance of the wall, itself, discloses the motive of the defendant. From a mere glance at the photograph of it as it appears in the record, it is very evident that it serves no useful, needful, or ornamental purpose, and that it was built some six or seven years ago, and ever since has been maintained, out of pure malice and spite.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.