## PARKER v. HARVEY et al.*

### No. 5136–5142.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

508

R. D. Watkins, of Minden, for appellants.

D. W. Stewart, Jr., and John T. Campbell, both of Minden, for appellee.

TALIAFERRO, Judge.

Plaintiff is the lessee of a lot of ground fronting 50 feet east and west on Union street in the city of Minden, La., and has operated thereon for over eight years a garage, gasoline sales and filling station. The garage and salesrooms are under one roof, and sit back from the street line about 28 feet. About the center of the lot (going east and west) and back some 12 feet from the street line are located three gasoline pumps, several feet high. Prior to the action of defendants which provoked this suit, the station pumps and equipment could be seen for considerable distance up and down Union street. This street forms part of highway 80 (from Monroe to Shreveport), over which there is heavy motor traffic.

The fact that plaintiff has conducted this business so long implies, as the evidence clearly discloses, that he has been fairly successful.

Until a brief time before this suit arose, the lot adjoining that occupied by plaintiff, on its west, was vacant. Its eastern end was freely used by plaintiff and those patronizing his station. It fronts on Union street over 100 feet, and was leased by T. C. Harvey, one of the defendants. He immediately took steps to erect a filling station thereon and installed gasoline pumps near its eastern end. He also caused to be erected a wall from the western end of the lot towards the eastern end, nearly parallel with the street line for a distance of 85 feet. The wall from this point was extended, at an angle of about 45 degrees, a distance of 62.5 feet (including an opening of 12½ feet) to a point very close to the corner on the street common to both properties. This wall consisted of a wooden frame covered by metal sheathing and is 12 feet high. As constructed and located, the lower 40 feet of it completely obscures from the vision of motorists on Union street, going east, the pumps and other equipment of plaintiff until they are close to a point opposite the wall's eastern end.

Plaintiff became alarmed at the threat he conceived the erection of this wall offered to his business, and promptly initiated steps to stop its contruction, through the equitable remedy of injunction. He avers:

"7. That the said T. C. Harvey, and one Oliphant, whose name is unknown to your petitioner, and his agents and employees are now engaged in erecting on the lot leased by the said Harvey a metal wall more than 20 feet in height, which said wall begins on the north side of the Harvey lot to the rear of the gasoline pumps by him erected, and runs in a southeasterly direction to a point where it intersects Union Street at the extreme north corner of the lot occupied and used by your petitioner.

"8. That said wall is of no use or benefit to the said T. C. Harvey and said Oliphant, his agents and employees; in the conduct of their business enterprise; that said wall has been and is being erected solely for the purpose and with the intent, to deprive your petitioner of the use of the property occupied by him, and with the view of destroying to the customers of your petitioner the right of ingress and egress in and out of your petitioner's place of business.

"9. Petitioner further alleges that said wall is calculated to, and will, unless prohibited, hide petitioner's place of business from view of tourists using U. S. Highway No. 80, and will deprive your petitioner of the use of his building for the purposes for which he leased the same.

"10. That said wall is being erected for the purpose of destroying your petitioner's business, which he has spent many years in building up; that it will deter and prohibit petitioner's customers from driving into his place of business, and will destroy the enterprise which he has been building for many years.

"11. That said wall will completely block the passage in front of petitioner's building, which is being used by his customers, and will prevent the proper display of his wares and merchandise; that it will render petitioner's building entirely unfit and useless for the purpose for which it was erected and is being used, and it cannot serve to be of any benefit to the said T. C. Harvey in the rightful conduct of his business.

"12. That the erection of said wall will cause your petitioner irreparable injury and damage, and unless removed, will continue to cause your petitioner inestimable damage; that by reason of the facts hereinabove set forth, petitioner is without any adequate remedy at law for the protection of his rights in the premises, except through the issuance of an injunction by this Honorable Court."

A temporary restraining order issued. Defendants moved to dissolve this order on the ground that the petition disclosed no right of action therefor, and damages for wrongful issuance of the order were prayed for. The exception was overruled, and preliminary injunction granted.

On the day this was done, plaintiff filed a supplemental petition wherein he avers that the metal wall is practically complete, and that it is causing him irreparable injury, and, in addition, has created a traffic hazard. He prayed for mandatory injunction requiring defendants to demolish the wall. An exception of no cause and no right of action was filed as to this supplemental petition. It was also overruled. The exceptions and motions are reurged here.

Answering the petitions, defendants deny that the construction of the wall deprives plaintiff's customers of ingress to and egress from his place of business, and aver, as the evidence discloses, that the wall was completed before any process was served on them herein. They further say: " * * * That the construction placed on said leased premises is in furtherance of a general advertising scheme used by your defendant, T. C. Harvey, in the operation of service stations of a similar character. This Station located at Minden, Louisiana, being only one of nineteen owned and operated by your defendant, T. C. Harvey, throughout the States of Arkansas, Louisiana, and Mississippi; that the use contemplated by your defendant of the leased premises is reasonable; said property being business property and said use will not in any way impair any legal rights owned by plaintiff."

Other allegations of fact by plaintiff are denied.

On trial of the case on its merits, a mandatory injunction was ordered to issue commanding defendants to demolish and remove the south wing or southerly 40 feet of said wall; this being the part which ob-structed the view of plaintiff's property from the west. From this final decree defendants applied for suspensive appeal. This was denied, but devolutive appeal granted. It is now before us. A like appeal is prosecuted from the granting of the preliminary injunction. No complaint is here urged against the correctness of the ruling of the court denying right of suspensive appeal from its final judgment on the application for mandatory injunction.

### Motion to Dismiss Appeal.

■ This motion was filed subsequent to submission of the case. Allegations of fact are set up to support it. Movers allege that the judgment appealed from has been executed and satisfied, in that the wall complained of has been removed and set back parallel with the street line; that defendants acquiesced in its removal, made no objection thereto, and that the issues involved in this case are now moot. Neither the motion nor supporting affidavits state who moved the wall. Replying to the motion, appellants aver that the wall was moved back by the sheriff of Webster parish over their objection and protest, and they deny acquiescence on their part in the judgment ordering its removal.

The appeal, being devolutive, did not suspend execution of judgment. If the wall was removed by the sheriff, and we think we may safely conclude from the papers before us that he did so, defendants were helpless to prevent such action. By allowing the judgment executed in this manner does not to any extent indicate that they acquiesced in it or in its execution. If it should here be held that said judgment is erroneous, defendants could again erect the wall where it was before being removed.

■ The right of an aggrieved litigant to take and prosecute appeal is guaranteed by the Constitution, and exists in all cases, otherwise appealable, where the party has not confessed judgment or acquiesced in same by voluntarily executing it. Code of Practice, art. 567; Lochbaum v. Southwestern Box & Lumber Mfg. Co., 121 La. 176, 46 So. 201.

"For an acquiescence in a judgment to take away the right of appeal, there must be an unconditional, voluntary, and absolute acquiescence by appellant, and he must have intended to acquiesce and abandon

his right of appeal." Saunders v. Busch-Everett Co., 138 La. 1049, 1050, 71 So. 153.

Appellants here vigorously prosecute their appeal, and now strenuously deny that they have directly or indirectly, to any extent, abandoned same or acquiesced in the judgment which they argue is prejudicial to their rights.

We do not think the motion warrants dismissal of the appeal, or remanding of the case to take testimony on the issue raised thereby. It is overruled.

### Exceptions of No Cause and No Right of Action and Motions to Dissolve.

■ These exceptions and motions are leveled against the allegations of plaintiff's petition to the effect that the portion of the wall complained of was erected entirely upon the lot under lease to defendant Harvey; it being argued that an owner or lessee of land has the right to utilize it as he desires so long as the use made of it does no more than cause inconvenience to his neighbor. Civil Code, arts. 491, 505, 666, 667, and 668 are cited as the controlling law on the subject. The petition definitely states that the part of the wall complained of is, and will be, of no use or benefit to T. C. Harvey in the conduct of his filling station business; that it was erected solely for the purpose and with the intent to injure plaintiff by destroying a prosperous business, established only after many years' close attention thereto, and by hindering his patrons in their ingress and egress of his business premises; that said wall, if allowed to remain, renders his building entirely unfit and useless for the purposes of its erection, and will be of no profit or benefit to said Harvey in the rightful conduct of his own business.

The merits of the exceptions and motions to dissolve are so closely related to the merits of the case that a discussion of the one necessarily trenches upon the other. The allegations of the petition, paraphrased above, make it quite clear that the wall was erected purely out of a desire and purpose to cause to plaintiff and his business material injury and loss, without being of any benefit to or compensating defendant to any extent. The law guards with zealous interest the rights and privileges incident to ownership of real property, but does not sanction every use that may be made of it. It is not al-

ways true that one may, without limit, utilize a property right as he sees fit, without regard to its effect upon his neighbor's rights. No fast rule can be laid down for guidance in such cases. The facts of each case is the determining factor. We think the petition does disclose a cause of action. Even though we were doubtful of the petition's sufficiency in this respect, it would be our duty to overrule the exceptions and uphold the petition. For these reasons, we are of the opinion that the lower court ruled correctly on the exceptions and motions.

### Merits.

■ The wall in question in no physical way contributes to the conduct of defendants' filling station business. It could be removed in its entirety without affecting or interfering with such business. It was designed and erected, as contended, for advertising purposes. We presume, from the testimony, that any one wishing to advertise his products for sale could buy space on this wall for that purpose. That part of the wall not involved herein, as well as the part moved back, is now being so used. Persons approaching the locus in quo from either direction (on Union street) may easily read all of the advertising matter on the wall, its entire length, before they are opposite either end of it. Advertisements on the lower 40 feet of the wall, as originally erected, could not have been seen by persons driving west on Union street until they had passed the wall's eastern end. Therefore, moving back the eastern wing of the wall and relocating it as a prolongation of the western 85-foot wing thereof, not only removes the threat to plaintiff's business, but in reality enhances the wall's value for advertising purposes, because all advertising thereon may easily be read by tourists and others on Union street going in either direction, whereas, as originally constructed, this could not be done by those coming from the west. The change certainly inflicts no loss or inconvenience upon defendants, but does serve to preserve to plaintiff the income and profits of a business he has invested many years of his life in building up. The injurious effect on said business, during the brief period the removed wall existed, was a falling off in volume of 75 per cent.

Notwithstanding defendants' denial of any design or fixed purpose on their part

to annoy, interfere with, or injure plaintiff or his business, the facts of the case impel us to an opposite conclusion. Injurious effect upon his business by flaring the wall was clearly foreseeable by any intelligent observer; and as defendants operate a string of filling stations, to them such effect must have been obvious. We are not unmindful of the high order of private rights and privileges which perfect ownership superinduces, but there are limits to the exercise of such rights and privileges beyond which the owner is inhibited to go. As stated before, no fast rule can be laid down for guidance in all cases. The facts of the present case support the conclusion reached by us that defendants have exceeded the limitations above mentioned.

It is argued that if defendants had erected a building along the common line between the two lots, extending to the sidewalk, obscuring plaintiff's business, property, and equipment, as the wall did, that he would not have just ground to complain. This is true; but this illustration is not analogous to the present case. The law definitely gives the owner the right to erect buildings and walls on property lines, even though inconvenience or damage to adjoining business may be caused, but such a permit does not imply the right to commit an unneighborly act which inflicts material injury upon the business of the adjacent owner, and which at same time does' not serve as a benefit to, or enhance the welfare or increase the profits of, the offender.

The following articles of the Civil Code are pertinent to a discussion of the question involved:

"491. Perfect ownership—Power of disposition—Nonresidents.—Perfect ownership gives the right to use, to enjoy and to dispose of one's property in the most unlimited manner, provided it is not used in any way prohibited by laws or ordinances.

"Persons who reside out of the State, can not dispose of the property they possess here, in a manner different from that prescribed by its laws."

"505. Ownership of soil—Usque ad coelum et ad inferos.—The ownership of the soil carries with it the ownership of all that is directly above and under it.

"The owner may make upon it all the plantations, and erect all the buildings which he thinks proper, under the exceptions established in the title: of servitudes.

"He may construct below the soil all manner of works, digging as deep as he deems convenient, and draw from them all the benefits which may accrue, under such modifications as may result from the laws and regulations concerning mines and the laws and regulations of the police."

"667. Sic utere tuo ut alienum non laedas.—Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

Justice Provosty, as the organ of the court in Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 211, 5 A.L.R. 411, discussed at length these articles, and others of the Code of similar import. In the course of a lengthy opinion, he quoted from and discussed the elaborations of several eminent French authorities on this important question. The facts in the cited case are: That plaintiff owned and operated a producing oil well. Defendant drilled a well 400 feet away, on another tract of land, and it came in dry. It was left open. The air pressure in the dry hole had the effect of reducing materially oil production from plaintiff's well. Plaintiff sued to compel defendant to close its well so that the injurious effects of the open well upon the producing well would cease. The Supreme Court overruled judgment of the lower court sustaining an exception of no cause of action, and remanded the case for trial on its merits. In his opinion Justice Provosty said:

"From these excerpts it is clear that cases like the present are not to be decided by the application of any broad or inflexible rule, but by a careful weighing of all the circumstances attending them, by diagnosing them, to use the expression of Baudry-Lacantinerie and Chauveau, with the aid and guidance of the two principles, that the owner must not injure seriously any right of his neighbor, and, even in the absence of any right on the part of the neighbor, must not in an unneighborly spirit do that which while of no benefit to himself causes damage to the neighbor. * * *

"The allegation is that the air is being let into a fissure or conduit through which it passes out of defendant's land into that of plaintiff and unto the radius affected by plaintiff's pump. Now if,

knowing of this fissure, and knowing that any air let into it would go to plaintiff's land and paralyze plaintiff's pump, the defendant had sunk the dry well in question for the very purpose of its having that effect, would it not be plain that the defendant was not merely exercising its own right, but deliberately injuring the right of plaintiff. And what difference is there between sinking this dry well intentionally for that purpose and letting it remain open intentionally for that purpose.

"In last analysis the case must turn upon whether plaintiff has the right to operate the pump in question, and whether, if plaintiff has that right, defendant may interfere with it with no benefit to itself, but simply to hinder plaintiff."

It will be noted that the court says: "And what difference is there between sinking this dry well intentionally for that purpose and letting it remain open intentionally for that purpose."

And so it is in the present case. Even though it should be held that defendants did not intend to injure plaintiff's business, yet, since their acts brought about such a result, with no profits or benefits to themselves, the legal effect of their action is the same as if they had purposely intended the result.

The principle laid down in the cited case has peculiar application to the facts of the present case. This principle obtains in many other jurisdictions. Volume 1, Corpus Juris, pages 1229, 1230, contains the following: "Section 82. Motive of Obstruction—In General. In the absence of statute, if the erection of a fence, wall, or other structure which deprives an adjoining owner of light, air, or view is lawful, it is generally not a nuisance per se, whether it was made with a malicious intention toward the adjoining owner or with a desire to improve or ornament the builder's property, as in such cases the law will not inquire into the motive with which the erection was made. In some jurisdictions, however, it is held that if an owner makes such an obstruction with the intention of injuring his neighbor, and without any advantage or benefit to himself, it is a nuisance for which his neighbor has a right of action. * * *"

In Burke v. Smith, 69 Mich. 380, 37 N. W. 838, 839, we find the following language of the court, supporting the principle here discussed, viz.: "While it is true that when one pursues a strictly legal right his motives are immaterial, yet no man has a right to build and maintain an entirely useless structure for the sole purpose of injuring his neighbor. The argument has force, and appears, irresistible, in the light of the moral law that ought to govern all human action. And the civil law, coming close to the moral law, declares that: 'He who, in making a new work upon his own estate, uses his right without trespassing either against any law, custom, title, or possession, which may subject him to any service towards his neighbors, is not answerable for the damages which they may chance to sustain thereby, unless it be that he made that change merely with a view to hurt others without advantage to himself.' Thus the civil law recognizes the moral law, and does not permit the owner of land to do an act upon his own premises for the express purpose of injuring his neighbor, when the act brings no profit or advantage to himself. The law furnishes redress, because the injury is malicious and unjustifiable."

For the reasons herein given, the judgment appealed from is affirmed, with costs.