CHARLES J. and BELLE SCHORCK,

*Plaintiffs and Appellants,*

vs.

PERCY and DAISY EPPERSON,

*Defendants and Respondents.*

(No. 2674; September 13th, 1955; 287 Pac. (2d) 467)

For the plaintiffs and appellants the cause was submitted upon the brief and also oral argument of G. R. McConnell and Walter Scott both of Laramie, Wyoming.

For the defendants and respondents the cause was submitted upon the brief of Sullivan & Sullivan of Laramie, Wyoming and oral argument by Mr. J. F. Sullivan.

288

## OPINION

BLUME, Justice.

The plaintiffs in this case alleged substantially as follows: They are the owners and occupants of lot 3, block 8, of the Union Pacific Railroad Addition in the town of Rock River, which faces D Avenue; that defendants are the owners of lots 1 and 2, block 8, which are contiguous to lots 3 on the east; that defendants without any consent of the plaintiffs on November 15, 1953, and on succeeding days constructed a slab board fence approximately 9 feet high and 106 feet long and about the full length of lot 3; that prior to the construction of said fence, plaintiffs enjoyed an unobstructed view to the east and received light and air in their home which they have occupied for better than 20 years and after the erection of the fence they were unable to see to the east and unable to have light and air; that defendants placed and maintained a red flag on the top of said fence for approximately six weeks; that on the east of plaintiffs' house are twelve windows from which the sun and light were obstructed; that the flag and the construction of said fence was done willfully, maliciously and for the sole purpose of harrassing, annoying and injuring plaintiffs in the use and enjoyment of their property.

The defendants filed an answer on March 4, 1954, admitting the ownership by plaintiffs of lot 3, block 8, as above mentioned. They admitted also that they erected a solid slab board fence about 8 feet high and 100 feet in length and denied all other allegations contained in the petition.

After the trial of the case and on May 15, 1954, the Court rendered judgment as follows:

"1. That the fence in controversy, described in Plaintiffs' petition, was erected partly because of malice and spite, but that said fence serves a useful purpose of the Defendants as a windbreak and snow fence.

"2. That Plaintiffs have been injured by the erection of the said fence by the Defendants, and that the amount of injury suffered by Plaintiffs is in excess of the benefits derived by Defendants from the erection of the said fence.

"3. The Court further finds, as a conclusion of law, no remedy exists against the erection and maintenance of a spite fence, although the motive that inspired it may have been malevolent, unless the fence is of no benefit to the owner; and that in this case, there was a benefit to the owner of the fence.

"It is, therefore ordered, adjudged and decreed that Plaintiffs take nothing by reason of their petition."

From that judgment, plaintiffs have appealed to this court.

Block 8 above mentioned adjoins on the east the Lincoln Highway which runs north and south and is the main highway in Rock River. Lots 1, 2 and 3 occupy the north half of Block 8 and are 130 feet in depth (north and south) and approximately 50 feet in width (east and west). Plaintiffs' home faces north on D Avenue which is a street running east and west from the Lincoln Highway. Lot 2 is a vacaant lot, except that it contains a small log cabin. Lot 1 adjoins the Lincoln Highway and defendants have a restaurant in the southeast corner thereof. The back end of this restaurant is approximately 75 feet distant from the plaintiffs' property. On the south of the lots mentioned is the customary alley.

The fence in question was constructed along the di-

viding line between lots 2 and 3, running north and south, and is over 100 feet in length. It is constructed of solid slab boards. Photographs of the fence are in the record before us and it is quite clear that the fence is an unsightly structure. It was erected 6 feet high for about 10 feet running south from D avenue. The remainder of the fence, all the way opposite plaintiffs' house, is approximately 9 feet high and comes close to the eaves of the house of plaintiffs, shutting off the view of the plaintiffs through their windows on the east, so that, as the testimony shows, they receive no sunshine until close to noon. The house is left very dark, and plaintiffs are compelled to use electric lights during the daytime in order to see. The fence is approximately 16 feet east of the home of the plaintiffs. A red flag, which was nothing but a red rag, was maintained on the fence for approximately six weeks. Mrs. Epperson testified that it was maintained on the fence for the purpose of warning boys not to go near the fence. Defendants claimed the fence was built to protect their restaurant from wind and snow. There is testimony in the record to support the trial court in finding that the fence to some extent acted as a windbreak and as a snow fence. It appears, however, that lots 1 and 2 above mentioned were not protected in any manner from the north, east and south sides so that protection from the fence must necessarily have been limited. Further the evidence shows that the house of plaintiffs was higher than the fence so that the whole length of it served the defendants, if anything did, as a windbreak and protection against the snow, and the fence necessarily added but little protection along the length of the house.

The witness, Sylvester W. Vogel, testified that he was the Mayor of Rock River; that he built and sold property for a number of years; that he was familiar with the price of property; that Rock River has a popu-

lation of about 365; that the fence in question is unsightly, well constructed, but rough, and tends to darken the house; cuts out the east sun and is nearly as high as the eaves of the house of plaintiffs; that the fence would not stop wind or snow any more than the Schork house; that it would stop some wind right close to the fence but no further than 13 feet east thereof; that the fence was no protection to defendants in view of the fact that it was not connected with any other fence around the property of defendants; that it subserved no beneficial purpose; that there are approximately 3 blocks of buildings thickly built up west of defendant's property which is in the direction of the prevailing wind and which break the wind. He further testified that the fence depreciated the home of plaintiffs by 50%, lowering the value from $10,000 to $5,000. Other witnesses also testified to the fact that the fence in question subserved no useful purpose whatsoever. There is no indication in the record that there were any unfriendly feelings between the plaintiffs and defendants until shortly prior to the time the fence was built. Mrs. Schork testified that some time prior to the construction of the fence Mrs. Epperson said to her, "We are going to spoil your pretty house, we are going to spoil your lilacs, we are going to spoil all your pretty flowers, we are going to board you up tight so that you cannot see out of any of your windows, board you up tight so no one can see your pretty flowers, we are going to put in a fence that you cannot see out of any of your windows, and we are going to break your filling station." Mrs. Epperson denied this conversation.

It appears that the plaintiffs had a restaurant south of the alley in block 8 above mentioned and across from the Epperson restaurant. It burned down on November 16, 1952. Thereafter on December 26, 1952, the defendants opened their restaurant on lot 1. During the sum-

mer of 1953, plaintiffs were reconstructing their burned building and were intending to use it as a restaurant thereafter. It would thus be in competition with the restaurant of the defendants. The surmise is permissible that this was the cause of the malice of defendants. Furthermore the character of the fence in question and its location hardly bear the mark of it having been erected in a spirit of benevolence.

The case of Erickson v. Hudson, 70 Wyo. 317, 249 P. 2d 523, involved a spite fence. We considered the subject in that case at considerable length, so that the discussion thereon in the present opinion may be made comparatively brief. We affirmed the judgment of the trial court in that case in directing the lowering of a fence which was 6½ feet in height so that it would not be higher than the sills of the windows of plaintiff.

The Supreme Court of Utah in Cannon v. Neuberger, 1 Utah 2d 396, 268 P.2d 425, 426, considering a question somewhat similar to the question involved in the case at bar, quoting from Dahl v. Utah Oil Refining Co., 71 Utah 1, 262 P. 269, 273, stated: "The test of whether the use of the property constitutes a nuisance is the reasonableness of the use complained of in the particular locality and in the manner and under the circumstances of the case.'" In 1 Am. Jur. § 3, p. 506, it is stated as follows:

"But the rule which allows one to use his own property in such a manner as to cause injury to the property of another without liability for that injury should be narrowly limited and carefully defined. No one may make an unreasonable use of his own premises to the material injury of his neighbor's. An ordinarily lawful use of property becomes unreasonable, and therefore unlawful, where the necessary effect is physically to invade the property of another owner.

"The test of the permissible use of one's own land is not whether the use or the act causes injury to his

neighbor's property, or whether the injury was the natural consequence, or whether the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also, public policy."

When it comes to the question of the so-called spite fences, many recent cases and many not so recent are out of harmony with this rule. They hold that an owner of property may erect a fence on his own premises as high as he pleases, though he does it maliciously and it is of no benefit to himself, motive not being considered. Annotation, 133 A.L.R. 697; 1 Am. Jur. § 52, p. 535. This rule first came into question in 1888 in the case of Burke v. Smith, 69 Mich. 380, 37 N.W. 838, 842, 8 L.R.A. 184, where Mr. Justice Morse held that one erecting a fence on his premises maliciously and without benefit to himself may be enjoined from maintaining it, and stated that statutes enacted against spite fences are merely confirmatory of the common law rule. He said: "What right has the defendant, in the light of the just and beneficent principles of equity, to shut out God's free air and sunlight from the windows of his neighbor, not for any benefit or advantage to himself, or profit to his land, but simply to gratify his own wicked malice against his neighbor? None whatever." His opinion was supported by another justice. But two justices did not agree. However the opinion of Justice Morse has since become the law of Michigan as well as other states. Annotation, 133 A.L.R. 692. For instance, it was stated in Barger v. Barringer, 151 N.C. 433, 66 S.E. 439, 442, 25 L.R.A. NS 831: "On this subject, if need be, we will do better to follow the pandects of the heathen Romans, whose jurists have inculcated a doctrine more consistent with the teachings of Him whom they permitted to be crucified, than to be

governed by the principles of the common law as expounded by some Christian courts and text writers." It must, however, be noted that almost all of the cases in the foregoing Annotation adopting the modified rule go no further than to hold that the malice must be *unmixed* with any benefit to the party erecting the fence. It is doubtless by reason of that holding that the trial court arrived at its conclusions of law herein. Only occasionally do we find mention of the fact that liability ensues if malice is the dominate factor and the usefulness of the structure is limited and merely incidental. Gallagher v. Dodge, 48 Conn. 387, 48 Am. Rep. 182. See also Cohan v. Perrino, 355 Pa. 455, 50 A.2d 348.

It cannot be surprising that the cases above mentioned and which hold the modified rule were limited as above stated. The courts were cautiously feeling their way. It was hard enough at first to break away from the former rule as announced by many without going further than absolutely necessary. There is no reason, however, for saying that these cases spoke the last word on the subject. The time was bound to come when that rule would come under scrutiny and the acid test of reason. It could not permanently, in this changing world, be or remain one to the effect that a fence is lawful if it subserved some useful purpose, however slight such useful purpose would be. Search for a broader rule eliminating incongruities was bound to be made. The acid test appears to have been applied by the authors of the Restatement of the Law of Torts which adopted the modified rule. It is stated in § 829 of that work:

"Under the rules stated in §§ 826-828, an intentional invasion of another's interest in the use and enjoyment of land is unreasonable and the actor is liable when the harm is substantial and his conduct is

(a) inspired solely by hostility and a desire to cause harm to the other; or

(b) contrary to common standards of decency."

It may be noted that reference to usefulness of the structure is entirely omitted. The comment states: "Where it is doubtful whether the facts of a case bring it within the rule here stated, the unreasonableness of the invasion is determined by the trier of fact under the general rule stated in § 826." That section states as follows:

"An intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in § 822, unless the utility of the actor's conduct outweighs the gravity of the harm."

In other words, if it is not altogether clear that the invasion of a right is actuated solely by malice or is contrary to common standards of decency, then resort must be had to section 826. That section is plain and explicit. It applies if the provisions of § 829 cannot strictly be said to apply. That the invasion of another's interest may be of some benefit to the actor makes in itself no difference. That is not the criterion. The criterion is as to whether or not the benefit exceeds the harm done. The actor is liable "unless the utility of the actor's conduct outweighs the gravity of the harm." The trial court herein found the converse to be true, finding "that the amount of injury suffered by Plaintiffs is in excess of the benefits derived by Defendants from the erection of the said fence." It is quite clear then that while we adopt the findings of fact of the trial court, its conclusions of law were erroneous if we adopt the rule of the Restatement of Torts as applied to this case. We find no sound reason why we should not do so. It is in harmony and in line with our decision in Erickson v. Hudson, supra. The Supreme Court of Nebraska came close to the rule in Bush v. Mockett, 95 Neb. 552, 145 N.W. 1001, 1002,

52 L.R.A. NS 736, when it stated: "No doubt every one has the right to any beneficial use he may see fit to make of his own property, if the benefit he seeks is not out of all reasonable proportion to the injury caused to another." Important as is the right to use and enjoy one's premises, the importance should not be magnified beyond all reason. As stated in Parker v. Harvey, La. App., 164 So. 507, 511: "We are not unmindful of the high order of private rights and privileges which perfect ownership superinduces, but there are limits to the exercise of such rights and privileges beyond which the owner is inhibited to go," Justice will at times be subserved if we bear in mind the ancient moral precept Sic Utere Tuo Ut Alienum Non Laedas—So use your own property as not to injure that of another. We should add in justice to the trial court that counsel in this case failed to call attention to the rule in the Restatement of the Law of Torts and the error herein is not primarily due to the court.

We think we should make an order herein similar to that which was made in Erickson v. Hudson, supra, and the trial court is directed to compel the defendants herein to lower the fence here involved so that it will not be higher than the sills of the windows on the east side of the home of plaintiffs and the court may make such further order as appears to be necessary or proper, not inconsistent with the views herein expressed.

*Affirmed in part.*

*Reversed in part.*

RINER, C. J., and HARNSBERGER, J., concur.