John CROZIER and Delia K. Crozier, Appellants (Defendants below),

v.

Edmund J. MALONE, Philip E. Johnson, Lawrence F. Kotecki and Lawrence G. Brown, Appellees (Plaintiffs below).

No. 2976.

Supreme Court of Wyoming.

Nov. 14, 1961.

Philip White, Cheyenne, for appellants.

A. Joseph Williams, Cheyenne, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiffs, residents of a subdivision known as North Cheyenne, sued to enjoin defendants from using three lots as an automobile trailer park contrary to a certain declaration of protective covenants for the area. Defendants admitted the filing of the declaration but contended that their grantors took by deeds which were dated prior to the time that the declaration was placed of record. Plaintiffs filed a motion for summary judgment, and the parties stipulated the facts which they considered to be material. The court granted an injunction and defendants have appealed.

At the inception, it must be noted that both litigants have failed to comply with Rule 12(a) and (c), Rules of the Supreme Court of Wyoming. There is no subject index, table of cases, or listing on the first page of the brief of the names of counsel and the persons represented by them. While the present litigation is not so complex or ramified that a failure to here observe the rule causes serious inconvenience, the noncompliance may not be passed without observation.

The facts are uncomplicated. In 1948 a plat of North Cheyenne was filed with the County Clerk of Laramie County, and on June 5, 1956, the properly authorized officers of the U.A.L. Employees Building Association executed a declaration of protective covenants for North Cheyenne at a time when the association was the owner of some 120 lots in the area, including the three now in controversy. The declaration contained a number of restrictions, one of which provided that no trailer should be used on any lot as a residence either temporarily or permanently. This declaration was circulated among the owners of the remaining lots in North Cheyenne who executed the covenants prior to July 28. Meantime, the association was in the process of dissolution, and the members thereof were being advised of the proposal of dissolution and offered lots or cash in exchange for their interest in the association. They were told that the protective covenants were being placed on the lots, and copies thereof were sent to the members prior to a meeting called for the dissolution of the association and the adoption of the covenants. At such meeting, there was a unanimous vote to accomplish both purposes.

On June 22, 1956, the association had completed, but did not immediately deliver to members Stophlet and Caveny, the deeds to the land in question. Each instrument recited, "subject to protective covenants of record." The declaration of protective covenants was delivered to the county clerk and recorded at 1:21 p. m., July 31, 1956, and the deeds to Stophlet and Caveny were recorded one minute later. The county clerk after the recordation mailed the deeds to the association's attorney, and the attorney mailed them to the grantees about August 10.

The Croziers entered into a contract of sale with Stophlet on October 13, 1956, for Lots 1 and 2, Block 1, and on October 25 took title by warranty deed from Caveny to Lot 3. Defendants, contending principally that no declaration of protective covenants was of record at the time that the association executed the deeds to Stophlet and Caveny, state that there are two questions properly raised by this appeal:

(1) Do the recitals in a deed insofar as terms and conditions are concerned relate to the date of the execution of the instrument or to the date of delivery?

(2) May a subsequent purchaser for value rely on the date of the instrument by which his predecessor received title as determining the effective date of recitals therein?

Defendants correctly quote 7 Thompson, Real Property, § 4126 (perm. ed. 1940), "A deed must take effect upon its execution if at all." However, they fail to note that § 4110 of the same work states, "De-

livery is an essential part of the execution of a deed. It does not take effect until there is a delivery to the grantee, either actual or constructive."

It is next contended that there is a presumption in this case that the deeds to Caveny and Stophlet were delivered on the date which appears on the face of each instrument, defendants quoting 16 Am.Jur. Deeds § 387, "A deed is presumed to have been delivered at the date of the instrument." This quotation is misleading since it makes no reference to the statement in § 396 of the same work, "The presumptions which are discussed in the preceding sections are not conclusive presumptions but in each instance may be rebutted by proper proof."

It is stipulated by the parties that the deeds from the U.A.L. Employees Building Association to Stophlet and Caveny covering the lands in question were not delivered to the grantees until they were mailed about August 10, 1956, following the time that the declaration of protective covenants had been placed of record.

■ Defendants' first question must, therefore, be answered by saying that the execution of a deed is not complete until delivery, either actual or constructive, and as a consequence the recitals in the deeds here in question, insofar as terms and conditions are concerned, relate to the stipulated date of delivery.

■ The answer to defendants' second question is found in § 34–21, W.S.1957, which provides that an instrument touching any interest in lands, made and recorded, shall be notice to subsequent purchasers from the time of delivery of the instrument to the register of deeds. It follows that a subsequent purchaser for value has constructive notice of any burden upon title from the date of recordation.

The general rule which would seem to govern situations such as the instant case is well stated in 4 Pomeroy, Equity Jurisprudence § 1295 (5 ed.):

"* * * When the owner of land enters into a covenant concerning it, * * * in a deed the grantor or the grantee covenants, * * * restricting certain specified uses * * * and the land is afterwards conveyed, or sold, or passes to one who has actual or constructive notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it, at the suit of the original covenantee or of any other person who has a sufficient equitable interest * * * in such performance. * * *"

■ Whether or not Caveny and Stophlet in their respective transfers to the defendants made reference to the declaration of protective covenants by which they were bound is not known since the allegations of ownership are most general, but in any event, their transferees had constructive notice of the restrictions and were bound thereby.

In Tulk v. Moxhay, 2 Ph. 774, 41 Eng. Rep. 1143, 15 E.R.C. 254, a case which has been accepted in many jurisdictions of the United States, the court, in discussing the effect of an agreement to abstain from using the land in a particular way, said that no one purchasing with notice of a restrictive agreement could stand in a different situation than his grantor. See the general discussion of the principle in Annotation, 23 A.L.R.2d 520, 524; 14 Am.Jur. Covenants, Conditions and Restrictions § 327.

Defendants took title to the property here in issue subject to the declaration of protective covenants then of record, and they were properly enjoined by the trial court from constructing an automobile trailer park on the land.

Affirmed.