**BOWERS WELDING AND HOTSHOT, INC., Marvin Bowers and Charlotte Bowers, Appellants (Defendants),**

v.

**Michael D. BROMLEY, Emma L. Bromley, Clyde E. Dickerson, Linda H. Dickerson, and Zenda M. Thomas, Appellees (Plaintiffs).**

No. 84–227.

Supreme Court of Wyoming.

May 10, 1985.

Clifford J. Neilson, Casper, for appellants.

Gerald R. Mason, Mason & Twitchell, Pinedale, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

The present appeal involves the enforcement of certain restrictive covenants in a subdivision. Appellees, owners of lots in the subdivision, sought to enjoin appellants Marvin and Charlotte Bowers from conducting commercial activities on appellants' lot in violation of certain restrictive covenants, requiring the land in the subdivision be used "for residential purposes only." The district court found generally for the appellees, ordering appellants to cease conducting commercial activities on the property, finding appellants' actions constituted a nuisance, and awarding appellees attorney's fees.

Appellants raise the following issues for our review:

"1. Whether the District Court erred in finding that the Restrictive Covenants recorded May 1, 1973, applied to the Defendants' property.

"2. Whether the activities of the Defendants conducted on their property were sufficiently intentional, unreasonable, unwarranted, and unlawful as to constitute a nuisance as defined by this Honorable Court.

"3. Whether the District Court was justified, based upon the evidence presented, to award attorney fees and costs to the Plaintiffs."

We will affirm the district court's finding that appellants violated the restrictive covenants and that their activities constituted a nuisance, but modify the judgment by deleting attorney's fees.

On March 18, 1983, the appellees, plaintiffs below, filed this action seeking to enjoin appellants, defendants below, from conducting further commercial activities on Lot 14 of the Green River Subdivision. Appellants denied violating any restrictive covenants, alleging the covenants at issue did not apply to their lot since they were omitted from the first set of restrictive covenants filed by the subdivision's developer, Fear Ranches, Inc. Appellants crossclaimed against developer Fear Ranches, but the cross-claim was dismissed upon motion by Fear Ranches.

The evidence presented at trial indicated that appellants were conducting commercial activities upon their land in the subdivision. A large metal building and several large metal tanks were constructed on appellants' property for use in their business. Large oil field trucks were dispatched from the property; drill pipe was loaded, unloaded and stored; and drilling rigs were also stacked and stored. Appellees complained of the noise generated by the truck traffic, as well as the unsightliness of the above activities in the rural residential neighborhood.

After trial on the merits, the district court found for appellees and ordered Lot 14 be brought into conformity with the restrictive covenants, holding:

"3. Lot 14 in the Green River Subdivision is subject to the original covenants and restrictions on file in the office of the Sublette County Clerk and there has been no waiver of those restrictions.

"4. The defendants had actual and constructive notice of the covenants.

"5. The defendants have violated and are continuing to violate the covenants * * *. (The remainder of paragraph 5 is set out infra pertinent to our discussion of nuisance.)

\* \* \* \* \* \*

"6. The foregoing actions of the defendants are a violation of the covenants in that the covenants require that Lot 14 be used for residential purposes only and all of the above actions are done in furtherance of a commercial business enterprise.

"7. The defendants are now failing and have since 1981 failed to maintain Lot 14 in a neat and orderly manner by depositing upon and using Lot 14 as described in paragraph 5 hereof.

"8. The defendants are maintaining a private nuisance on Lot 14 as that term is defined in the covenants and independently of the covenants.

\* \* \* \* \* \*

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

"1. The defendants are hereby prohibited and permanently and prospectively enjoined from conducting any further welding, repair or hot shot business from or on Lot 14 * * *.

\* \* \* \* \* \*

"2. The defendants are hereby mandatorily enjoined and ordered to abate the nuisance, to put Lot 14 in a neat and orderly condition * * *.

\* \* \* \* \* \*

"3. Lot 14 of Green River Subdivision, Sublette County, Wyoming, is henceforth to be used for residential purposes only and is to be maintained in a neat and orderly fashion.

"4. The 60' × 100' building erected on Lot 14 by the defendants is commercial by its very nature and appearance but the Court does not order it to be removed at this time and will allow the individual defendants a reasonable time to demonstrate that the building can be used in conjunction with their personal residence as an appurtenant structure, but it must be used only by the individual defendants (the corporation has no residential purposes) and it must be used for residential purposes only."

I

In their first issue, appellants raise the question of whether the district court erred in finding that the restrictive covenants recorded May 1, 1973, applied to appellants' property. To determine this issue, examination must be made of the facts and circumstances attendant upon appellants' purchase of the property.

In March of 1973, Fear Ranches, Inc. executed a plat of the Green River Subdivision constituting some 160 acres divided into 14 lots. The plat was recorded on April 4, 1973, and specifically provided "that the subdivision is subject to covenants and restriction of record." [1]

1. Appellants also claim the plat map and the first set of restrictive covenants were improper-

On April 1, 1973, appellant Marvin Bowers paid $500 as a down payment toward the purchase of Lot 14. On May 15, 1973, appellants and Fear Ranches, Inc., made an agreement for warranty deed. This document was recorded on June 22, 1973, and specifically made the sale *"SUBJECT TO* covenants for governing Green River Subdivisions filed for record in the Office of the County Clerk, Sublette County, Wyoming." (Emphasis in original.)

On April 23, 1973, Fear Ranches, Inc., executed restrictive covenants governing the Green River Subdivision. These covenants specifically stated:

"WHEREAS, the undersigned wishes to place certain restrictions on the *tracts in all of said GREEN RIVER SUBDIVISIONS* being situated within Sections 20 and 29, Township 29 North, Range 111 West of the 6th Principal Meridian, Sublette County, Wyoming, for the benefit and protection of the undersigned and those purchasing said tracts; and

"WHEREAS, the undersigned desires that this instrument shall define the restrictions upon said tracts and shall be later incorporated by reference in the deeds and contracts to persons purchasing said tracts *with said restrictions thereby intended to apply to each tract* and to run with the land through subsequent transactions;

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS that *all tracts in the GREEN RIVER SUBDIVISION*, above described, *are subject to the following listed restrictions*, to-wit:

"1. Said land shall be used for residential purposes only. Commercial, public or illegal purposes in the use of such lands or residences is hereby barred.

"2. It shall be the duty of lot owners to keep their lots neat and orderly and free from odor producing refuse and the governing committee shall have the power to declare a nuisance if lots are not so kept.

If the lot owner does not remove such nuisance upon ten (10) days' notice, then the governing committee shall have the authority to abate said nuisance at the lot owner's expense.

\* \* \* \* \* \*

"4. Lot Thirteen (13) of the Green River Subdivision is specifically excluded from the commercial provision of Paragraph 1, in that it can continue to be used for gravel pit; all other provisions hereof still pertain to said Lot Thirteen (13)." (Emphasis added.)

These covenants were recorded on May 1, 1973.

■ On June 21, 1973, certain "Revised Restrictive Covenants for Governing Green River Subdivisions" were recorded. This document is identical to the first set of restrictive covenants recorded, except it also includes Section 32. Herein lies the problem in this case. Appellants assert that since the first restrictive covenants recorded excluded Section 32 wherein Lots 13 and 14 and a portion of Lot 12 are located, the covenants do not apply to their property, Lot 14. However, a close examination of the facts reveals that such is not the case.

When the revised restrictive covenants were recorded on June 21, 1973, Fear Ranches, Inc., was still the record owner of all the lots in the subdivision. Furthermore, when appellants' agreement for warranty deed was recorded on June 22, 1973, the complete revised restrictive covenants had already been filed. Therefore, appellants are held to have constructive, if not actual, notice of the covenants. Furthermore, the first set of restrictive covenants referred to the gravel pit in Lot 13, also a part of Section 32, so a reasonable person would have been placed on notice that the restrictive covenants were applicable to Lots 23, 13, and 14. We agree with the trial court when it stated at the close of the trial:

ly notarized in violation of § 34–50, W.S.1957, which was in effect at the time of acknowledgment but has since been repealed. We find no merit to this claim of error. The documents

were endorsed by a notary public under official seal and dated in compliance with § 34–1–113, W.S.1977.

"Well, of course, this case started when a mistake was made over at a lawyer's office, they didn't put Section 32 on the covenants. But interestingly enough they put—they talked about another lot, another tract; 13, for instance, in those original covenants, the tract having to do with the gravel pit which was in Section 32. It would have been obvious to anyone who made a reasonable inquiry that Section 32 was included, but more than that Section 32 was in fact a part of the Green River Subdivision which was in fact mentioned when a plat was filed as early as April of 1973 which defined the Green River Subdivision, and the covenants are applicable to the Green River Subdivision.

"The Court finds that the original covenants are applicable to this case and apply to the Green River Subdivision and all of the property therein including Section 32. So, the covenants are applicable. There's been no waiver.

"The Court further finds that the defendants had actual notice of the restrictive covenants. They also had constructive notice."

In *Crozier v. Malone,* Wyo., 366 P.2d 125 (1961), we held the purchasers of three lots in a tract of land had notice of a restrictive covenant prohibiting trailers as residences when such covenant was recorded a mere one minute prior to the recording of the purchasers' deeds. Therein we stated:

"The answer to defendants' second question is found in § 34–21, W.S.1957 [now § 34-1-121, W.S.1977], which provides that an instrument touching any interest in lands, made and recorded, shall be notice to subsequent purchasers from the time of delivery of the instrument to the register of deeds. It follows that a subsequent purchaser for value has constructive notice of any burden upon title from the date of recordation." Id. at 127.

Sometime between June 8, 1973, and October 1, 1973, Frank Fear of the Fear Ranches, Inc., had a conversation with appellant Marvin Bowers regarding the covenants, although no one seems to recall exactly what was said.

"The notice of restrictions sufficient to charge a purchaser may be actual notice or notice of facts sufficient to put him on inquiry. For instance, the notice sufficient to charge a purchaser of a lot in a subdivision with knowledge of restrictions imposed in deeds to other lots as part of a general plan, but inadvertently or otherwise omitted from the deeds in his chain of title, may be actual or constructive, including notice of facts which ought to have put him on inquiry, such as the uniform appearance of the area in which the lot is located. * * *

"If the purchaser has actual notice of an agreement containing restrictions, it is not material that the agreement is not of record. At least, where it does not appear that the agreement was of record, the purchaser with actual notice has been held bound by the restrictions. Even notice of a parol agreement binds the purchaser to comply with the restrictions." 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, §§ 307–308, pp. 871–872 (1965).

A common way in which to uphold restrictive covenants is to find a general plan or scheme for the development of a tract of land. To determine this, we must look to the restrictive covenants and construe them to effectuate the intent of the parties. *Dawson v. Meike,* Wyo., 508 P.2d 15 (1973).

"The fundamental rule in construing restrictive covenants is that the intention of the parties as shown by the covenant governs. Such intention is determined by a 'fair interpretation of the grant or reserve creating the easement,' and a servitude over one parcel of land for the benefit of another can be established only when that appears to have been the intention of the grantor.

"In the determination of the intention of the parties, the entire context of the covenant is to be considered. In construing the words of the covenant, the court is not limited to dictionary definitions, but the meaning of words used is governed·

by the intention of the parties, to be determined upon the same rules of evidence as other questions of intention. * * * " 20 Am.Jur.2d, Covenants, Conditions, and Restrictions § 186, p. 753 (1965).

Frank Fear testified it was certainly the intent of the developers to include Section 32, as well as all the lots in the Green River Subdivision in the restrictive covenants. Indeed, the first set of restrictive covenants recites that "the undersigned wishes to place certain restrictions *on the tracts in all of said* GREEN RIVER SUBDIVISIONS," and "KNOW ALL MEN BY THESE PRESENTS *that all tracts * * * are subject to the following listed restrictions.*" (Emphasis added; capitalized words in original).

 We find there was a clear intent on the part of the developer to create a general plan or scheme and subsequently hold all the owners of lots within the subdivision subject to the restrictive covenants. Once a general building plan or scheme is found, it is enforceable on all the lots in a subdivision even though the restrictive covenants are not expressly placed in every conveyance, provided a party has actual or constructive notice of the covenants. 7 Thompson on Real Property § 3163, p. 125 (1962).

"Though the most complete way of creating a neighborhood plan or scheme is by reciprocal covenants in all deeds for the common benefit of all grantees, such a scheme is effectually created where the common grantor maps and plans into lots a tract of land, and offers to sell and does sell the lots under an oral representation that all lots will be conveyed subject to like covenants, for the common benefit of all subsequent grantees, and in such case purchasers with notice or knowledge are bound by the covenants. * * * " 7 Thompson on Real Property § 3159, p. 102 (1962).

"As a general rule, the omission of a restrictive covenant contemplated by a general plan of development of a subdivision, through inadvertence or otherwise,

in a conveyance of one of the lots by the subdivider, does not prevent enforcement of the restriction against the immediate grantee of such lot, or his successor in title, if either took with notice of the restriction or knowledge of the general plan. * * * " 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, § 177, p. 740 (1965).

See also *Harris v. Roraback*, 137 Mich. 292, 100 N.W. 391 (1904); 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, § 169, p. 729, § 299, pp. 863–864 (1965); Annot., 4 A.L.R.2d 1364 (1949).

In *Sanborn v. McLean*, 233 Mich. 227, 206 N.W. 496, 60 A.L.R. 1212 (1925), the defendants/owners of a lot in a tract of land developed under a general building scheme were held to be bound by the "residential purposes only" restrictive covenants in deeds to the other lots in the tract, even though no such restrictions appeared in their deed. The defendants wished to construct a service station on their lot in a clearly residential neighborhood. The developers had placed restrictions in some deeds to tract owners, but not in others. The court held the defendants bound by the restrictive covenants even though not included in their deed, nor their predecessors. The court stated:

"* * * If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to owners, but operative upon use of the land by any owner having actual or constructive notice thereof. It is an easement passing its benefits and carrying its obligations to all purchasers of land, subject to its affirmative or neg-

ative mandates. It originates for mutual benefit and exists with vigor sufficient to work its ends. It must start with a common owner.

\* \* \* \* \* \*

" * * * Considering the character of use made of all the lots open to a view of [the defendant] when he purchased, we think, he was put thereby to inquiry, beyond asking his grantor, whether there were restrictions. * * * " Id. at 497–498.

Accord, *Hisey v. Eastminster Presbyterian Church*, 130 Mo.App. 566, 109 S.W. 60 (1908), wherein a lot owner in a residential tract was enjoined from erecting a church even though his deed contained no such restrictions. The court found the owner purchased his lot subject to an equity or negative easement created by the restrictive covenants found in the deeds to other lot owners. See also Annot., 84 A.L. R.2d 780 (1962); and *Godley v. Weisman*, 133 Minn. 1, 157 N.W. 711 (1916).

In *Hein v. Lee*, Wyo., 549 P.2d 286 (1976), a defendant operated a sawmill in a subdivision in violation of a "residence only" restrictive covenant. The defendant's position was that he had no actual notice of the covenants, but evidence indicated the defendant had been informed of the covenants by the developer. We held the defendant was bound by the restrictive covenants since he had actual notice of them and upheld the enjoining of his operation of the sawmill.

"Appellant also contends that the covenants were not lawfully imposed with respect to his properties. The trial court correctly held that they were binding upon the appellant's lands since it found, based upon the evidence in the record that the appellant had actual notice of these covenants. [Citations.] The record also demonstrates [the developer's] intent to adopt a general scheme for development by imposition of the restrictive covenants. Neither the fact that they do not appear in his deed nor the fact that they were not properly placed on public record relieves the appellant of

their burden because he had actual notice. [Citations.]" Id. at 292.

More recently, this court upheld a restrictive covenant allowing only one single-family dwelling within a subdivision in *Dice v. Central Natrona County Improvement and Service District*, Wyo., 684 P.2d 815 (1984). And we upheld a restrictive covenant requiring lots within a subdivision be used for "residential purposes only," enjoining the construction of a shop/garage in *Sutherland v. Bock*, Wyo., 688 P.2d 157 (1984).

At a minimum, we find appellants in the present case had constructive, if not actual, notice of the restrictive covenants pertaining to their lot. The first set of restrictive covenants referred to the gravel pit in Lot 13 as being an exception to the "residence only" restriction. As stated earlier, Lot 13 is in Section 32 where appellants' Lot 14 is also located. So, a reasonable person would have been put on notice that the restrictive covenants applied to Lot 14 as well as "all tracts in the GREEN RIVER SUBDIVISION." Such is clearly the intent of the developer.

Furthermore, when appellants recorded their agreement for warranty deed, the revised restrictive covenants listing their property had already been recorded. The covenants were discussed with appellant Marvin Bowers by the developer. Therefore, we think there was ample testimony for the trial court to conclude that appellants had notice of the restrictive covenants and that they applied to appellants' property.

II

Appellants' second issue raises the question of whether their activities were such as to constitute a nuisance. As indicated earlier, the trial court found that appellants' activities were a nuisance and enjoined any further commercial activity on appellants' property:

"The Court finds, further, that there is a nuisance on that property in question. There is no doubt in the Court's mind whatsoever that the covenants are appli-

cable, even as a part of the deal, part of the total deal with reference to the purchase, the defendants were required to get title insurance. They got title insurance and the title insurance said that the property [was] subject to the restrictive covenants.[2] The agreement for warranty deed said that they were and the deed said they were. Both deeds, both the partial deed in October of '73 and the final warranty deed.

"The Court enjoins the use of the property for other than residential purposes permanently. The Court abates the nuisance as of now."

Since we have already held the restrictive covenants applicable to appellants' property, it is not imperative that we address this issue at length. But to answer the issue, we find the trial court was correct in holding appellants' activities constituted a nuisance.

We have defined nuisance as being "a class of wrongs which arises from an unreasonable, unwarranted, or unlawful use by a person of his own property, working an obstruction or injury to the right of another." *Lore v. Town of Douglas*, Wyo., 355 P.2d 367, 370 (1960), quoting *City of Phoenix v. Johnson*, 51 Ariz. 115, 75 P.2d 30, 34 (1938). See also, 66 C.J.S. Nuisances § 1, p. 727 (1950).

In *Hein v. Lee*, supra, discussed above, the trial court enjoined the defendants from operating a sawmill on their lot in a subdivision as violative of the restrictive covenants. The court also found the activity to constitute a nuisance. We upheld such finding and stated:

"* * * Absent a controlling statute or ordinance, and none appears here, it is within the province of the trial judge to balance equities and to decide whether an injunction should or should not issue with respect to an alleged nuisance. *Hillmer v. McConnell Brothers*, Wyo., 414 P.2d 972 (1966). Our examination of this record persuades us that the trial

court properly applied the balancing test adopted by this court in *Schorck v. Epperson*, 74 Wyo. 286, 287 P.2d 467 (1955), in reaching its determination that an injunction should issue.

"The record also demonstrates that the district court was aware of and applied the proper test which considers the effect which the operation of the sawmill would have on ordinary and reasonable persons, that is, on persons of ordinary health, normal or average sensibilities, and ordinary tastes and habits and mode of living. *Erickson v. Hudson*, 70 Wyo. 317, 249 P.2d 523 (1952). * * * The district court's conclusion that under the facts and circumstances shown by this record the operation of appellant's sawmill was a nuisance per accidens is consistent with similar cases from other jurisdictions, and we hold that this decision is supported by the evidence of record and binding upon this Court. *Erickson v. Hudson*, supra." Id., at 291–292, 249 P.2d 523.

In this case, the trial judge had personal knowledge of the subdivision and had visited the site on several occasions. He heard the testimony of the appellees, who were owners of other lots in the subdivision, to the effect that they had moved to this rural residential neighborhood to enjoy a quiet atmosphere in an attractive setting. The truck traffic in and around appellants' property was disturbing to appellees. The heavy steel tanks, storage of pipe, stacking and storing drilling rigs, storing numerous pieces of pipe, sheet metal and scrap iron for appellants' welding business were all annoying and unattractive to appellees. Indeed, the trial court found the appellants were conducting the following activities on their property:

"a) They are and have been since 1981 conducting a welding, repair and hot shot business on Lot 14;

"b) The individual defendants since 1982 have erected and have been renting a 60'

---

**2.** Apparently the title insurance examiner had little problem finding appellants' property was subject to restrictive covenants, a further indication that the trial court was correct in its finding.

× 100′ commercial building and have rented equipment to the corporate defendant for business purposes on Lot 14;

"c) They are and have been since 1982 dispatching or directing truck traffic from Lot 14;

"d) They are and have been since 1981 loading, unloading and storing drill pipe on Lot 14;

"e) They are and have been since 1982 stacking and storing drilling rigs on Lot 14;

"f) They are and have been since 1981 storing and using in the welding business numerous pieces of pipe, sheet metal, and scrap iron on Lot 14;

"g) They did in 1981, and indicated they would again if given opportunity, construct and fabricate large water tanks on Lot 14;

"h) They are and have been since 1981 using numerous employees on Lot 14, parking employee vehicles on Lot 14, and dispatching employees to various job sites from Lot 14; and

"i) They are and have since 1981 parked upon and used on the property numerous commercial vehicles including trucks, trailers, forklifts, and welding equipment."

We find ample evidence upon which the trial court could find a nuisance. Appellees have a right to be protected from such activity in obvious derogation and obstruction to them as property owners.

### III

■■■ Appellants' final issue asks whether the district court "was justified, based upon the evidence presented, to award attorney fees and costs to the Plaintiffs [appellees]." It is generally recognized that attorney's fees are not recoverable in the absence of express statutory authorization or contractual obligation. *United States of America v. Redland,* Wyo., 695 P.2d 1031 (1985); and *Kvenild v.*

*Taylor,* Wyo., 594 P.2d 972 (1979). See also, Comment, "Attorney's Fees in Public Interest Litigation," 16 Land & Water Law Review, p. 727 (1981). Appellees have cited no justification to be awarded attorney's fees. In the present case we find no statutory authority nor contractual liability upon which to award attorney's fees.

The judgment of the trial court is affirmed insofar as it found the restrictive covenants were applicable to appellants' property and the operation of commercial activities upon appellants' property constituted a nuisance. The trial court's judgment is modified by deleting the award of attorney's fees to appellees.

ROONEY, Justice, specially concurring.

I agree with the majority opinion with reference to its holding on the issues pertaining to nuisance and attorney fees. I do not agree with all of that said in the majority opinion relative to the restrictive covenants issue. And I believe the court need not have addressed such issue inasmuch as the case could have been disposed of on the nuisance issue.

Accordingly, there is no useful purpose in detailing my concern over that which I consider to be dicta. The principal fault of the holding of the majority opinion relative to restrictive covenants is its effect upon title searches. Under it, a record title search, by a purchaser of appellants' property, for example, will not determine title status. It will not reflect the property to be subject to the restrictive covenants. It will show that when the property was conveyed to appellants on May 15, 1973, there was no record of a restrictive covenant on it. The plat of the land to which it is a part reflected that it was subject to covenants and restrictions *of record.* Of record was only the first set of restrictive covenants, which did not apply to appellants' property.[1] A title search, then, could properly

---

1. The majority opinion places reliance on the language of such covenants which recites the restrictions to apply to "the tracts in *all* of said GREEN RIVER SUBDIVISIONS" (emphasis added), without consideration of such in context; i.e., the quoted language continues "being situated within Sections 20 and 29." Appellants' property is in Green River Subdivision but is

certify the property as not burdened by the covenants. Under the majority opinion, however, the title searcher would be faced with deciding the intent of the seller as to the existence or nonexistence of the covenants (not as to the meaning of covenants acknowledged to exist)—an impossible task as a general rule.

In this respect, the majority opinion confuses the existence of constructive notice of that which is of record (a true constructive notice) with notice of existing uses or activities from which a duty to inquire may result. At the time of purchase by appellants, there were no such uses or activities, but if there were such creating a duty in this instance, the resulting inquiry would simply have determined no use restriction on appellants' property at the time of purchase—regardless of the seller's intention. The seller is not a party to this lawsuit.

I do not mean to say that, as between appellants and the seller, an understanding or agreement could not be enforced regardless of prior recordation of evidence of such. The principal purpose of recordation is to give notice to those *subsequently* interested parties. *Connolly v. Des Moines & Central Iowa Railway Company*, 246 Iowa 874, 68 N.W.2d 320 (1955); *Cheyenne National Bank v. Citizens Savings Bank*, Wyo., 391 P.2d 933 (1964). But it is not essential to the validity of an agreement between the parties to the instrument. *Martin v. Commercial National Bank of Macon*, Georgia, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed.2d 441 (1918); *Godwin v. Gerling*, 362 Mo. 19, 239 S.W.2d 352, 40 A.L.R.2d 1250 (1951); *Amana Society v. Colony Inn, Inc.*, Iowa, 315 N.W.2d 101 (1982). One may rely on the recorded title to real property in absence of actual knowledge of the title in

fact or of facts sufficient to put him on inquiry concerning the same. *Williams v. Jackson*, 107 U.S. 478, 2 S.Ct. 814, 27 L.Ed. 529 (1883); *Federal Land Bank of Spokane v. Union Cent. Life Ins. Co.*, 54 Idaho 161, 29 P.2d 1009 (1934). There is no evidence whatsoever in the record that appellants had actual knowledge of any restrictive covenants placed upon their property as of the time of purchase.[2] And, as indicated supra, any inquiry as a result of facts which would have put them on notice of such covenants would have resulted in a determination that there were no covenants as of the time of purchase.

The amended restrictive covenants were not only of no potency as far as appellants were concerned because they were imposed subsequent to purchase by appellants, but they were adopted only by Fear Ranches, Inc. and not by the other owners of property in the subdivision (including appellants) at the time of adoption. *Hein v. Lee*, Wyo., 549 P.2d 286 (1976).

I would reverse the holding of the district court relative to the restrictive covenants and attorney fees issues and would affirm its holding relative to the nuisance issue, remanding the case for the purpose of entering a judgment enjoining appellants from any unreasonable, unlawful or unwarranted use of their property which works an obstruction or injury to the reasonable use by others of their property, specifically enjoining the use of appellants' property for storing, keeping or maintaining drilling rigs, pipes, scrap material or other items of an unsightly nature, and specifically enjoining the use of appellants' property for dispatching or directing truck traffic or for any activity creating an unreasonably loud noise.

---

not in Section 20 or 29. It is in Section 32, and the covenants are plain in that they do not pertain to Section 32.

2. Appellants purchased the property from Fear Ranches, Inc. and negotiated the purchase with Frank Fear, an officer of the corporation. Frank Fear testified that he vaguely remembered talking to appellant Marvin Bowers subsequent to the sale about the restrictive covenants and that he was not, at the time, concerned

about haying machinery and welding activities by appellants on the property. Marvin Bowers testified that he did not know of the covenants when he executed the contract for deed, and that Frank Fear subsequently told him that it "really doesn't pertain to" him. He testified that during the negotiations for purchase of the property, the restrictive covenants were never discussed, and as far as he knew "there was [sic] no restrictive covenants."